JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Feeding America

**(b)** County of Residence of First Listed Plaintiff   Cook County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Darius C. Gambino, DLA Piper, LLP, 1650 Market Street, Suite 4900
Philadelphia, PA 19103; 215-656-3309

## DEFENDANTS

Michele Wilson, Michael Whalen, Brian Fehr and Exotic Design Group

County of Residence of First Listed Defendant   Allegheny County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government
  Plaintiff
- ☒ 3  Federal Question
  *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government
  Defendant
- ☐ 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                           *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☒ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. Section 1114; 15 U.S.C. Section 1125(a); 15 U.S.C. Section 1125(d); 15 U.S.C. Section 1125(c)

Brief description of cause:
Trademark Infringement; Unfair Competition and False Designation of Origin; Cyberpiracy; Dilution by Tarnishment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
Treble actual damages

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
August 15, 2018

SIGNATURE OF ATTORNEY OF RECORD
Darius C. Gambino

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Feeding America,<br>Plaintiff,<br>       v.<br><br>Michele Wilson, Michael Whalen,<br>Brian Fehr, and Exotic Design Group,<br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br>NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) (●)

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( )

| August 15, 2018 | Darius C. Gambino | Plaintiff, Feeding America |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-656-3309 | 215-606-3309 | darius.gambino@dlapiper.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## Civil Justice Expense and Delay Reduction Plan
## Section 1:03 - Assignment to a Management Track

(a)         The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)         In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)         The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)         Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)         Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Feeding America, 35 East Wacker Drive, Chicago, IL 60601 _____

Address of Defendant: ___ M. Wilson and M. Whalen, in or near Bethel Park, PA; B. Fehr, in or near Kittanning, PA; Exotic Design Group, 2400 Oxford Dr., PMB 301, Bethel Park, PA 15102 ___

Place of Accident, Incident or Transaction: _____ Commonwealth of Pennsylvania _____

---

*RELATED CASE, IF ANY:*

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year    Yes ☐   No ☑
    previously terminated action in this court?

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit    Yes ☐   No ☑
    pending or within one year previously terminated action in this court?

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier    Yes ☐   No ☑
    numbered case pending or within one year previously terminated action of this court?

4.  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights    Yes ☐   No ☑
    case filed by the same individual?

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __August 15, 2018__          _____          __83496__
                    *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**   *Federal Question Cases:*

☐ 1.   Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2.   FELA
☐ 3.   Jones Act-Personal Injury
☐ 4.   Antitrust
☐ 5.   Patent
☐ 6.   Labor-Management Relations
☐ 7.   Civil Rights
☐ 8.   Habeas Corpus
☐ 9.   Securities Act(s) Cases
☐ 10.  Social Security Review Cases
☑ 11.  All other Federal Question Cases
        *(Please specify):* ____ Trademark Infringement ____

**B.**   *Diversity Jurisdiction Cases:*

☐ 1.   Insurance Contract and Other Contracts
☐ 2.   Airplane Personal Injury
☐ 3.   Assault, Defamation
☐ 4.   Marine Personal Injury
☐ 5.   Motor Vehicle Personal Injury
☐ 6.   Other Personal Injury *(Please specify):* _____
☐ 7.   Products Liability
☐ 8.   Products Liability – Asbestos
☐ 9.   All other Diversity Cases
        *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Darius C. Gambino _____, counsel of record *or pro se plaintiff*, do hereby certify:

☑   Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case
    exceed the sum of $150,000.00 exclusive of interest and costs:

☐   Relief other than monetary damages is sought.

DATE: __August 15, 2018__          _____          __83496__
                    *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

Feeding America,
Plaintiff,

v.

Michele Wilson, Michael Whalen,
Brian Fehr, and Exotic Design
Group,

Defendants.

Civil Action No.:_____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, Feeding America, by its undersigned counsel, brings this action for trademark infringement, unfair competition, violation of the Anticybersquatting Consumer Protection Act (ACPA), dilution, and other claims against Defendants Michele Wilson ("Wilson"), Michael Whalen ("Whalen"), and Brian Fehr ("Fehr"), collectively doing business as Exotic Design Group ("EDG") (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

Plaintiff Feeding America seeks injunctive relief and damages against Defendants based on Defendants' infringement of Feeding America's FEEDING AMERICA® trademark.  Feeding America is a well-known nonprofit food bank and the largest domestic hunger relief organization in the United States.  Feeding America has been using its incontestable federally registered and common law mark for almost ten years in connection with its charitable efforts to alleviate hunger in this country.  Defendants are known cybersquatters operating under the fictitious name, Exotic Design Group.  Defendants recently re-registered and began using a previously-

1

obtained but inactive domain name, <feedingamerica.com>, that inherently infringes on Plaintiff's federally-protected trademark. Defendants intentionally and in bad faith re-registered the domain name and created a website to disparage Plaintiff and to deliberately cause confusion with Plaintiff's mark and with Plaintiff's own website, <feedingamerica.org>. Defendants' website features images of topless women consuming food, while also purporting to promote charitable services, including services and resources for fighting hunger in the United States. Despite multiple demands from Plaintiff that Defendants cease using the FEEDING AMERICA® mark and the cyberpirated domain <feedingamerica.com>, Defendants have refused and continue to persist in their unlawful actions. Defendants' activities constitute trademark infringement, unfair competition, false designation of origin, cyberpiracy, unfair trade practices, injury to business reputation, dilution, and misappropriation, among other violations of federal and state law. As a result, Plaintiff has suffered, is suffering and, unless injunctive relief is entered by this Court, will continue to suffer ongoing irreparable harm due to Defendants' conduct alleged herein.

## PARTIES

1.      Plaintiff Feeding America is an Illinois non-profit corporation with its principal place of business at 35 East Wacker Drive, Chicago, IL 60601.

2.      Upon information and belief, Defendant Michele Wilson is an individual residing at 2400 Oxford Drive, Apt. 301, Bethel Park, Pennsylvania 15102-1856.

3.      Upon information and belief, Defendant Michael Whalen is an individual residing at 3922 Mimosa Drive, Bethel Park, Pennsylvania 15102-3516.

4.      Upon information and belief, Defendant Brian Fehr is an individual residing at 134 Rinker Hollow Road, Kittanning, Pennsylvania 16201-5418.

2

5.      Exotic Design Group is a fictitious name registered by Defendant Wilson with the Pennsylvania Secretary of State.  Upon information and belief, Defendant EDG appears to be an unincorporated entity comprised of Defendants Wilson, Whalen and Fehr.  EDG purports to have a principal place of business at 2400 Oxford Dr., PMB 301, Bethel Park, PA 15102.

## JURISDICTION AND VENUE

6.      This action arises under the Federal Trademark Act of 1946, known as the Lanham Act (15 U.S.C. §§1051-1127), and the Anticybersquatting Consumer Protection Act (1999), 15 U.S.C. §1125 ("ACPA").

7.      This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) because this action involves claims by Plaintiff for trademark infringement, unfair competition and cyberpiracy arising under 15 U.S.C. § 1114 and  15 U.S.C. § 1125.

8.      This Court has supplemental jurisdiction over the claims in this Complaint that arise under the laws of the State of Pennsylvania pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9.      This Court has personal jurisdiction over all Defendants because Defendants Wilson, Whalen, and Fehr are Citizens of this Commonwealth and reside within the Commonwealth of Pennsylvania.  Defendant EDG is deemed to reside within the Commonwealth of Pennsylvania.  Further, all Defendants conduct continuous, systematic, and routine business within the Commonwealth of Pennsylvania, and have directed their unlawful activities at the Commonwealth of Pennsylvania.

WEST\282072885.2

10.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because Defendants are deemed to reside in this district and are subject to personal jurisdiction in this district at the time the action commenced.

## FACTS GIVING RISE TO THIS ACTION

### A. Feeding America's Fight Against Hunger

11.     The concept of food banking was developed by John van Hengel in Phoenix, Arizona in the late 1960s.  Van Hengel, a retired businessman, had been volunteering at a soup kitchen trying to find food to serve the hungry.  One day, he met a desperate mother who regularly rummaged through grocery store garbage bins to find food for her children.  She suggested that there should be a place where, instead of being thrown out, discarded food could be stored for people to pick up—similar to the way "banks" store money for future use.  With that, an industry was born.

12.     Van Hengel established St. Mary's Food Bank in Phoenix, Arizona as the nation's first food bank.  In its initial year, van Hengel and his team of volunteers distributed 275,000 pounds of food to people in need.  Word of the food bank's success quickly spread, and states began to take note.  By 1977, food banks had been established in eighteen cities across the country.

13.     As the number of food banks increased, van Hengel created a national organization for food banks and in 1979 he established Second Harvest, which was later called America's Second Harvest the Nation's Food Bank Network.  In 2008, the network changed its name to Feeding America to better reflect the mission of the organization.

14.     Today, Feeding America is the nation's largest domestic hunger-relief organization—a powerful and efficient network of 200 food banks and 60,000 food pantries and

4

meal programs across the country. Feeding America distributes over 4.3 billion meals a year and feeds 46 million people at risk of hunger, including 12 million children and 7 million seniors. Feeding America's food banks deliver programs at the front line of hunger, programs such as school-based food pantries, emergency disaster relief, and Kids' Cafe.

15.      In addition to providing nourishing food, Feeding America uses its resources to fight hunger in many other ways. For example, Feeding America has distributed $56 million in grants to local food banks to assist with those food banks' general operations.

16.      Feeding America also works with lawmakers to advance policies that help to alleviate hunger, and partners with corporate sponsors such as Starbucks, Target, and Walmart to further advance cooperative charitable initiatives. For example, Starbucks FoodShare is a new, innovative program that enables Feeding America to rescue unsold food from Starbucks locations each night to stock the shelves of local food pantries.

### B. Feeding America's Valuable Trademarks and Domain Name

17.      Since at least as early as November 1, 2008, Feeding America has exclusively and continuously used in commerce the trademark, FEEDING AMERICA, in connection with providing charitable services related to food banks and food pantries (the "FEEDING AMERICA Mark").

18.      Feeding America is the owner of all rights, title and interest in and to U.S. Trademark Registration No. 3,558,894 for the mark FEEDING AMERICA®, which issued on the Principal Register of the United States Patent and Trademark Office on January 6, 2009 (the "FEEDING AMERICA® Registration"). The FEEDING AMERICA® Registration protects Feeding America's goods and services described in international Class 35 ("distributorships featuring surplus and salvageable food"); Class 39 ("warehousing services, namely, distribution

5

and delivery of surplus and salvageable food"); and Class 43 ("charitable services, namely, providing food to the needy"). The application for this registration was filed on March 31, 2008. A copy of the Certificate of Registration for the FEEDING AMERICA® Registration is attached hereto as Exhibit 1.

19.     On November 10, 2014, Feeding America filed a combined declaration of use under Section 8 of the Trademark Act, 15 U.S.C. §1058, and incontestability under Section 15 of the Trademark Act, 15 U.S.C. §1065, for the FEEDING AMERICA® Registration.  On November 28, 2014, the U.S. Patent and Trademark Office accepted Feeding America's Section 8 declaration of use and acknowledged Feeding America's Section 15 declaration of incontestability. The FEEDING AMERICA® Registration 3,558,894 is valid, subsisting, uncancelled, and unrevoked.

20.     In addition to the FEEDING AMERICA® Registration, Feeding America owns common law rights in the FEEDING AMERICA Mark.

21.     By virtue of Feeding America's continuous use of the FEEDING AMERICA Mark, the FEEDING AMERICA® Registration has become incontestable pursuant to 15 U.S.C. § 1065.

22.     Feeding America has expended substantial effort and significant sums of money in promoting, advertising and enforcing the FEEDING AMERICA Mark nationwide.

23.     By virtue of Feeding America's longstanding use and significant promotional efforts, the FEEDING AMERICA Mark has become associated exclusively with Feeding America, and has become a famous mark.

24.     In 2016, Feeding America hosted volunteer opportunities at both the Republican and Democratic National Conventions.

6

25.      Feeding America has partnered with  numerous well-known, national organizations, including, The Walt Disney Company, Daddy Yankee, Tony Robbins, The Ludacris Foundation, the United States Department of Veterans Affairs, the Justin J. Watt Foundation, the clothing company, Spiritual Gangster, and the David Tepper Charitable foundation, in order to help further its mission of fighting hunger in the United States and raise awareness about hunger-related issues.

26.      As a result of Feeding America's long-term and expansive use of the FEEDING AMERICA Mark, Feeding America has amassed substantial goodwill for this mark.

27.      Feeding America owns all rights, title and interest in and to the domain name, <www.feedingamerica.org>.  Feeding America first registered the <www.feedingamerica.org> domain on or around February 15, 2008, and re-registered the <www.feedingamerica.org> domain on or around February 16, 2018.

28.      Feeding America operates its website through its <feedingamerica.org> domain. This website provides critical information to the public on Feeding America's work and mission, its history and operations, and how individuals can volunteer or take other action in the fight against hunger.  The website also provides a search feature to locate food banks across the country.  Additionally, the public can, and does, make donations to Feeding America directly from the <feedingamerica.org> website. *See* screenshots from the homepage of the <feedingamerica.org> website attached hereto as Exhibit 2.

### C. Defendants' Unlawful Conduct

29.      Defendants, operating as Exotic Design Group, have a history and pattern of cybersquatting on trademarks.  Defendants are believed to own hundreds, if not thousands, of domain names for which they attempt to broker and resell to individuals and businesses.

30.      Defendants have been held to be cybersquatters on several separate occasions for their registration of domain names of trademarks owned by Gateway, Inc., the National Football League, and Virgin Enterprises.

31.      Defendants, by and through Exotic Design Group, own the domain, <www.feedingamerica.com> ("Defendants' Domain").

32.      Defendants, by and through Exotic Design Group, registered Defendants' Domain on or around September 1, 2006.

33.      Upon information and believe, there was no content on Defendants' Domain between 2006 and 2012.

34.      Upon information and belief, between 2013 and 2015, the only content on Defendants' Domain was a banner ad offering to sell Defendants' Domain. *See* an image of the <feedingamerica.com> domain taken from an internet archive website on April 13, 2013, attached hereto as Exhibit 3.

35.      Despite having full and actual knowledge of Plaintiff Feeding America and Feeding America's protected trademark and competing web domain, Defendants re-registered Defendants' Domain on or around August 28, 2016.  Defendant's re-registration of Defendants' Domain was also for cybersquatting purposes and not for use as a valid website.

36.      Plaintiff's FEEDING AMERICA Mark had become famous and distinctive prior to Defendants' re-registration of Defendants' Domain.  Defendants' re-registration of Defendants' Domain was done in bad faith and in violation of the ACPA.

37.      Defendants thereafter began posting content to Defendants' Domain on or around October of 2016.  Thus, Defendants squatted on the domain, <feedingamerica.com> from September, 2006 to at least October, 2016.

8

38.     Defendants intentionally and in bad faith created their domain content to disparage and tarnish Plaintiff's trademark and cause confusion among members of the public as to the source of Plaintiff's charitable services.

39.     Defendants' Domain purports to "highlight the need for food and nutrition in Latin American Countries" but the main focus of the website is a series of images and videos of topless women eating a variety of different food products. *See* the homepage of the <feedingamerica.com> website attached hereto as Exhibit 4.

40.     As a pretext, Defendants claim that one of the topless women featured on Defendants' Domain is nick-named "America".

41.     Defendants' Domain features a page titled, "Hunger," which contains the statement, "Our website may amuse you, or entertain you, but seriously, hunger in the Americas, from North America to Latin America, is a serious problem." This page defines "North America" as including the United States. *See* screenshot of the <feedingamerica.com> "Hunger" tab of the website attached hereto as Exhibit 5.

42.     Defendant's Domain invites viewers to "look into some of the following resources in the fight against hunger" and provides a list of inactive links to charities located in the United States. Defendants do not include Plaintiff Feeding America on Defendants' purported lists of resources, even though Feeding America is the nation's largest hunger relief charity. *See* screenshot of the <feedingamerica.com> "Charity" tab attached hereto as Exhibit 6.

43.     By their acts, Defendants intentionally sought to divert the public and potential donors from Feeding America's website to a website that harms Feeding America's reputation and goodwill. Defendants further intentionally sought to tarnish and disparage Feeding America's name and protected trademark.

9

44.     On April 30, 2017, Feeding America sent a letter to Defendants demanding that Defendants cease use of the FEEDING AMERICA Mark and the cyberpirated domain name, <feedingamerica.com>. Defendants ignored Plaintiff's demand.

45.     On May 25, 2017, Feeding America sent a follow up letter to Defendants and again demanded Defendants cease use of the FEEDING AMERICA Mark and the cyberpirated domain, <feedingamerica.com>. Defendant Whalen responded to this letter on June 9, 2017 and refused to cease Defendants' unlawful activities.

46.     Defendants' continued use and disparagement of the FEEDING AMERICA Mark is unfair, misleads and deceives or is likely to mislead or deceive the public, dilutes the unique nature of the FEEDING AMERICA Mark, and has caused and, until enjoined, will continue to cause irreparable injury to Feeding America's goodwill, identity, and reputation, for which Feeding America has no adequate remedy at law.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1114)

47.     Plaintiff realleges paragraphs 1 through 46 as if fully set forth herein.

48.     The FEEDING AMERICA Mark is federally registered as U.S. Registration No. 3,558,894, and such registration is valid, subsisting, uncancelled, and uncontestable.

49.     Feeding America has built substantial public recognition in and to the FEEDING AMERICA Mark under which it does business in interstate commerce such that the mark has become famous.

50.     The Defendants' use of the infringing mark through Defendants' Domain and the Defendants' website content is unauthorized by Feeding America, is likely to cause confusion,

mistake or to deceive the public as to the affiliation, connection, or association of Defendants and their services with those of Feeding America.

51.     The Defendants' use and threatened continued use of the infringing mark constitutes "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services," in violation of 15 U.S.C. § 1114(1)(a).

52.     Defendants' continued use of the FEEDING AMERICA Mark is likely to cause, and has caused, confusion, mistake and/or deception of consumers as to the source, origin or sponsorship of services, in violation of the Lanham Act including, but not limited to, 15 U.S.C. § 1114.

53.     Defendants' use of the infringing mark infringes upon Feeding America's federally-protected trademark rights.

54.     Defendants continue to knowingly and willfully infringe upon Feeding America's rights in the FEEDING AMERICA Mark, despite being put on actual notice of Feeding America's rights and its objections to Defendants' use of Plaintiff's mark.

55.     The goodwill of Feeding America's organization under the FEEDING AMERICA Mark is of great value and, by reason of Defendants' acts alleged herein, Feeding America has suffered and will continue to suffer damage to its organization, reputation, and goodwill.

56.     Defendants' continued and escalating violations of 15 U.S.C. § 1114 have caused and, unless enjoined by this Court, will continue to cause irreparable injury to Feeding America that is not fully compensable in monetary damages. Feeding America cannot ascertain the amount of compensation which would afford it adequate relief for such continuing acts. Feeding America is therefore entitled to an injunction enjoining and restraining Defendants from use of

11

the FEEDING AMERICA Mark, or any other mark that is confusingly similar to Feeding America's mark.

57.     Defendants have engaged in acts of infringement, with knowledge of Feeding America's exclusive rights in and to the FEEDING AMERICA Mark, and with intent to cause confusion and unlawfully benefit therefrom. Defendants continue in such acts of intentional infringement, thus entitling Feeding America to an award of treble its actual damages, Defendants' profits, plus attorneys' fees and costs in bringing and maintaining this action, pursuant to 15 U.S.C. § 1117.

## COUNT II
## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

58.     Plaintiff realleges paragraphs 1 through 57 as if fully set forth herein.

59.     Defendants' use and threatened continued use of the FEEDING AMERICA Mark constitutes unfair competition, and a false designation of origin or a false or misleading description or representation of fact, which is likely to deceive members of the public, customers and prospective customers, and donors and prospective donors into believing that Defendants' services are those of Feeding America, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60.     Defendants' actions are likely to cause confusion or mistake among the public as to the true origin and sponsorship of Defendants' services, and to confuse the public into believing that Defendants' services have the approval of Feeding America, or are otherwise affiliated, connected, associated with, or sponsored by Feeding America, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

WEST\282072885.2

61.     The Defendants' activities injure the reputation, goodwill, and prestige of Feeding America, impair the value of Feeding America's trademark, which is uniquely associated with the services that Feeding America provides, and cause other injury to Feeding America. Feeding America and the public will suffer irreparable injury unless Defendants are restrained from using the infringing mark and Defendants' Domain.

62.     The goodwill of Feeding America's organization under the FEEDING AMERICA Mark is of great value, and Feeding America will suffer irreparable harm should Defendants' acts of unfair competition, and false representation and designation, be allowed to continue, to the detriment of Feeding America's reputation and goodwill for which damage Feeding America cannot be adequately compensated at law.

63.     Feeding America has no control over the quality of the services or lewd presentations offered by Defendants.  All of the community ill will associated with Defendants lewd and offensive website depicting images of topless women is likely to be associated with Feeding America because of the identical nature of the infringing mark and Feeding America's FEEDING AMERICA Mark.

64.     As a result of the Defendants' actions, Feeding America has lost, and will lose in the future, donations in an unknown amount due to the donors' erroneous belief that the Defendants' Domain is affiliated with Plaintiff Feeding America.

65.     Defendants have engaged in acts of unfair competition, false representation and designation, with knowledge of Feeding America's exclusive rights to the FEEDING AMERICA Mark, and Defendants continue in such acts of unfair competition, intentional false representation and designation, thus entitling Feeding America to an award of treble its actual

13

damages, Defendants' profits, plus attorneys' fees and costs in bringing and maintaining this action, pursuant to § 35(b) of the Lanham Act, 15 U.S.C. § 1117(b).

### COUNT III
### CYBERPIRACY
### (15 U.S.C. § 1125(d)

66.     Plaintiff realleges paragraphs 1 through 65 as if fully set forth herein.

67.     Feeding America uses its federally registered FEEDING AMERICA Mark on its website and as its domain name, <www.feedingamerica.org>.

68.     The Defendants' Domain is identical to Feeding America's FEEDING AMERICA Mark.

69.     Feeding America, by virtue of its prior and continuous use of the FEEDING AMERICA Mark and its ownership of the FEEDING AMERICA® Registration, is the owner of the FEEDING AMERICA Mark which was distinctive and famous at the time that Defendants re-registered the Defendants' Domain.

70.     Defendants  registered, re-registered, and used the domain name, <www.feedingamerica.com>, which is confusingly similar to Feeding America's registered FEEDING AMERICA Mark, with a bad faith intent to profit from and/or disparage the goodwill associated with Feeding America from its registration, re-registration, and use of that infringing domain name, in violation of the Anticybersquatting Consumer Protection Act (1999), 15 U.S.C. § 1125(d)(1)(A).

71.     Defendants have no bona fide intellectual property rights in the Defendants' Domain, except to profit on Feeding America's goodwill and well-established reputation.

72.      Unless permanently enjoined by this Court, Defendants will continue use of the domain name <feedingamerica.com> with a bad faith intent to profit from and/or disparage

Feeding America's valuable mark, thereby causing injury to Feeding America.  There is no adequate remedy at law for the harm that Feeding America has and will continue to incur, and the actions of Defendants have irreparably and otherwise injured Feeding America.

73.   As a result of Defendants' registration and re-registration of the Defendants' Domain and use of the domain name <feedingamerica.com>, Feeding America has suffered damages in an amount to be determined at trial.

74.   Accordingly, Feeding America is entitled to the transfer of the domain name <feedingamerica.com> or, in the alternative, to the forfeiture or cancellation of this domain name pursuant to 15 U.S.C. § 1125(d)(1)(C).

75.   In lieu of actual damages, Plaintiff Feeding America is entitled to an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just, pursuant to 15 U.S.C. § 1117(d).

## COUNT IV
## DILUTION BY TARNISHMENT
## (15 U.S.C. § 1125(c))

76.   Plaintiff realleges paragraphs 1 through 75 as if fully set forth herein.

77.   The FEEDING AMERICA Mark is a distinctive mark that has been in use for nearly ten (10) years and has achieved widespread public recognition.

78.   As a result of Feeding America's prolonged use and promotion of the FEEDING AMERICA Mark, the mark has become famous within the meaning of 15 U.S.C. § 1125(c) in the relevant marketplace.

79.   Feeding America's promotion of its nonprofit services under the FEEDING AMERICA Mark has been substantial and extensive.

80. Defendants began using the FEEDING AMERICA Mark after the FEEDING AMERICA Mark became distinctive and famous.

81. Defendants' unauthorized use of the FEEDING AMERICA Mark constitutes commercial use and dilutes the distinctive quality of Feeding America's mark and services.

82. Through their unauthorized use of the FEEDING AMERICA Mark, Defendants willfully intended to trade on the recognition of and to create an association with the FEEDING AMERICA Mark.

83. In committing unlawful dilution by tarnishment, Defendants willfully intended to harm the reputation of Feeding America's famous FEEDING AMERICA Mark.

84. Defendants' actions have injured and will continue to injure Feeding America unless enjoined by this Court.

85. Defendants have engaged in willful acts of dilution by tarnishment, with knowledge of Feeding America's exclusive rights to the FEEDING AMERICA Mark, and Defendants continue in such willful acts of dilution by tarnishment, thus entitling Feeding America to an award of its actual damages, Defendants' profits, plus costs in bringing and maintaining this action, pursuant to § 35(b) of the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT V
## TRADEMARK INFRINGEMENT UNDER PENNSYLVANIA COMMON LAW

86. Plaintiff realleges paragraphs 1 through 85 as if fully set forth herein.

87. Feeding America has a property interest in its name, reputation and goodwill which Feeding America, at significant expense, has built up through its use, advertising and promotion of the FEEDING AMERICA Mark.

16

88.   Defendants' use of Plaintiff's FEEDING AMERICA Mark and unlawful re-registration of Defendants' Domain, as alleged above, constitutes deliberate and bad faith copying of Plaintiff's FEEDING AMERICA Mark, which misappropriates the goodwill owned in the FEEDING AMERICA Mark, and is likely to confuse, mislead, or deceive the relevant consuming public into believing that Defendants' website and services promoted on that website are associated with or related to Plaintiff. The conduct of Defendants is commercially immoral and constitutes an attempt to profit from the labor, skill, expenditures, name and reputation of Feeding America.

89.   As a direct and proximate result of the foregoing acts, Defendants unlawfully derived, and will continue to derive, income, profits, and ever-increasing goodwill from their activities, and Plaintiff has been damaged and has suffered, and will continue to suffer, significant damages, in an amount to be proven at trial.

90.   Money damages alone cannot fully compensate Plaintiff for Defendants' misconduct. Unless Defendants are enjoined by the Court, they will continue to engage in common-law trademark infringement and unfair competition as alleged above, thereby causing irreparable injury to Plaintiff and its business identity, goodwill, and reputation. Plaintiff is therefore entitled to an injunction restraining and enjoining Defendants from using Plaintiff's mark and the deceptively similar domain, <feedingamerica.com>.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court enter an Order and Judgment granting it the following relief:

1.      Permanently enjoining the Defendants and each of its agents, employees, officers, attorneys, successors, assigns, affiliates, and any persons in privity or active concert or participation with any of them from:

(a) using the FEEDING AMERICA Mark or any mark containing the term FEEDING AMERICA;

(b) using any trademark that imitates or is confusingly similar to or in any way similar to the Plaintiff's FEEDING AMERICA Mark, or that is likely to cause confusion, mistake, deception, or public misunderstanding as to the origin of Plaintiff's services or to their connectedness to Defendants;

2.      Ordering the transfer of Defendants domain name, <feedingamerica.com> to Plaintiff Feeding America pursuant to 15 U.S.C. § 1125(d)(1)(C), or, in the alternative, ordering the forfeiture or cancellation of the domain name <feedingamerica.com>, and any other domain name or subdomain name that consists of, is similar to, or contains the FEEDING AMERICA® Mark.

3.      Awarding Plaintiff treble its actual damages, Defendants' profits, plus costs and reasonable attorneys' fees in bringing and maintaining this action pursuant to 15 U.S.C. § 1117.

4.      Awarding Plaintiff statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

5.      Declaring this to be an exceptional case and awarding Plaintiff its full costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

WEST\282072885.2

6.      Awarding Plaintiff such other relief that the Court deems just and proposed under the circumstances.

Dated: August 15, 2018             Respectfully submitted,

Darius C. Gambino, Esquire (PA 83496)
DLA PIPER (US) LLP
One Liberty Place
1650 Market Street
Suite 4900
Philadelphia, PA 19103-7300
Phone: (215) 656-3309
Fax: (215) 606-3309
darius.gambino@dlapiper.com

Counsel for Plaintiff
Feeding America

19

EXHIBIT 1

Int. Cls.: 35, 39, and 43

Prior U.S. Cls.: 100, 101, 102, and 105

Reg. No. 3,558,894

**United States Patent and Trademark Office**     Registered Jan. 6, 2009

## SERVICE MARK
### PRINCIPAL REGISTER

# FEEDING AMERICA

FEEDING AMERICA (ARIZONA NON-PROFIT CORPORATION)
SUITE 2000
35 EAST WACKER DRIVE
CHICAGO, IL 60601

FOR: DISTRIBUTORSHIPS FEATURING SUR-PLUS AND SALVAGEABLE FOOD, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 11-1-2008; IN COMMERCE 11-1-2008.

FOR: WAREHOUSING SERVICES, NAMELY, DISTRIBUTION AND DELIVERY OF SURPLUS AND SALVAGEABLE FOOD, IN CLASS 39 (U.S. CLS. 100 AND 105).

FIRST USE 11-1-2008; IN COMMERCE 11-1-2008.

FOR: CHARITABLE SERVICES, NAMELY, PRO-VIDING FOOD TO THE NEEDY, IN CLASS 43 (U.S. CLS. 100 AND 101).

FIRST USE 11-1-2008; IN COMMERCE 11-1-2008.

THE MARK CONSISTS OF STANDARD CHAR-ACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SN 77-435,990, FILED 3-31-2008.

REBECCA EISINGER, EXAMINING ATTORNEY

EXHIBIT 2





## EXHIBIT 3



EXHIBIT 4



EXHIBIT 5



EXHIBIT 6



# FEEDING AMERICA
### America is a very picky eater

| ABOUT FEEDING AMERICA | AMERICA'S FAVORITE FOODS | CHARITY | CONTACT | GALLERIES | SUGGEST A FOOD | HUNGER |

Home / Charity

# Charity

SHARE   TWEET   SHARE   SHARE   0 COMMENTS

Quick Navigation

## Latin American Charity Organizations

- The LATA Foundation – The Latin America travel industry in the UK is working together to support social and environmental projects throughout Latin America. Our projects are helping to transform lives, providing clean water, dental or medical support and practical training to provide people with new skills in Mexico, Central and South America.

- La Vida – La Vida distributes grants for projects such as student scholarships, medical training, school expansions and community health education. We have an impressively low cost base with 97% of the funds raised going directly to our projects. Everyone working for the charity, including the trustees and executive committee, gives their time on a voluntarily basis.

- Save The Children – Latin America – Save the Children works in Latin America to provide for some of the world's poorest children. With a population of 568 million, nearly 25 % live on less than $2 a day. Save the Children works in these areas to help bring hope and possibilities into children's lives, allowing them to thrive in the bright futures they all deserve.

FOLLOW US!